539 A.2d 1160

**Mark Terrance RHODES**

v.

**STATE of Maryland.**

**No. 1086, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

April 12, 1988.

R. Kenneth Mundy, Washington, D.C., for appellant.

Jillyn K. Schulze, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, Andrew L. Sonner, State's Atty. for Montgomery County and Margaret W. Grove, Asst. State's Atty. for Montgomery County on the brief, Rockville), for appellee.

Argued before MOYLAN, GARRITY and ROSALYN B. BELL, JJ.

MOYLAN, Judge.

The appellant, Mark Terrance Rhodes, was found guilty in the Circuit Court for Montgomery County by Judge William C. Miller, sitting without a jury, of 1) first-degree rape and 2) battery. The appellant does not appeal from the battery conviction in any way. Upon this appeal, he raises the single contention:

That the evidence was not legally sufficient to show the use of force and absence of consent necessary to sustain a conviction for rape.

We find no merit in the appellant's contention. The primary flaw is that the appellant confuses appellate argument with jury argument. In this case, the appellant argues that there were implausibilities in the victim's story, that there was no physical trauma, that the victim failed to seize opportunities to escape from the presence of the appellant before the rape took place, and finally that the victim did not run screaming to make an immediate com-

plaint after being released by the appellant. All of this, of course, goes to the weight of the evidence and the credibility of the witnesses, matters which are within the exclusive competence of the fact finder and are of no concern to appellate review.

Even from the point of view of the fact finder, moreover, the appellant inappropriately assumes that the tell-tale characteristics of "stranger-rape," frequently accompanied by savage and gratuitous violence, would necessarily be present in cases of "acquaintance-rape" or "date-rape." Such is clearly not the case.

The appellant and the victim in this case had known each other as acquaintances from attending the same P.T.C. Career Institute in Silver Spring. They had known each other at least one week prior to the rape. The appellant had given the victim rides home on at least three occasions. They had exchanged telephone numbers and she had even given him a "friendship ring." They had made tentative plans to get together socially over the weekend of August 3–4, 1985, but, through a failure in communications, did not make contact.

On the critical day of August 6, 1985, they made contact at about 1 P.M. in the lunchroom. The victim accompanied the appellant outside, where an argument ensued and the appellant slapped the victim twice. Although the appellant was acting in a very aggressive manner, the victim testified that she thought she could handle the situation and did not break off the contact. In the appellant's car, they drove to the appellant's apartment. The victim voluntarily entered. The appellant directed someone else who was in the apartment to leave.

The two continued to argue, with the appellant becoming increasingly more aggressive. At one point, he threatened to knock the victim out of the window. The appellant partially disrobed. He pulled out a handgun and threatened to blow the victim's "fucking brains out." It was at that point that he ordered her to undress. She kicked him,

whereupon he warned her that he would "break [her] fucking leg" if she kicked him again.

According to the victim's testimony, that version of events which we assume to be true for purposes of judging the legal sufficiency of the evidence, the appellant pushed her into the bedroom and laid the gun on the table. It was the appellant who removed the victim's shirt and brassiere, just before pushing her backwards onto the bed. After ordering her to perform various sexual acts, which she successfully refused, he ordered her to perform vaginal intercourse. When she refused to spread her legs, he pushed them apart and proceeded to rape her.

When the two of them finally exited the appellant's apartment, he drove her to a 7–11 Store and ordered her out of the car. To several friends, whom she met shortly thereafter, she was obviously distraught but protested that nothing was wrong. She did, however, call home and report the rape to her cousin.

It matters not that the victim had a prior social relationship with the appellant and voluntarily went to his apartment. She had the absolute legal right, while there, not to engage in sexual intercourse. This would be true if, as in the present case, there had been no history of prior sexual conduct between the parties. This would be equally true if there had been a prior sexual history between them. As an act of sexual intercourse that is not consented to, rape can be an *ad hoc* phenomenon on any given occasion. A history of prior consent to a relationship does not negate the rape on a given occasion; it simply may make proof more difficult as a matter of evidence. See Art. 27, § 461A(a)(1).

The primary failure of the appellant here, in arguing the significance to be given the facts in the case, is the failure to appreciate that the psychological reaction of a victim of "date rape" may typically bear little resemblance to the reaction of a victim who has been subjected to a violent attack at the hands of a stranger. Notwithstanding feel-

ings of anger, resentment, and betrayal, the "date rape" victim does not generally fear for her life and run screaming from the scene. Instead of making an immediate report, it may not be unusual for the "date rape" victim to experience a time of anguish and depression while she weighs inwardly the factors of anger and resentment, on the one hand, versus the gravity of bringing serious criminal charges against an erstwhile friend and the embarrassment, perhaps, of being shown to have been in a compromising situation, on the other hand. It is enough to note that the reactions to be expected may bear little resemblance to the typical reactions that occur when the rapist is a total stranger.

Taking that version of the facts most favorable to the State's case, the appellant overcame the victim's reluctance by the use of physical force, by verbal threats, and by the brandishing of a handgun. The evidence, if believed, was clearly legally sufficient to permit Judge Miller to make the finding of fact he did without being clearly erroneous. Md.Rule 1086.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.